**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTY MALLORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 4364 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| RUSH UNIVERSITY MEDICAL CENTER, | ) | |
| an Illinois not-for-profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Christy Mallory alleges that she sustained severe and permanent injuries when she slipped and fell on a puddle of liquid in Defendant Rush University Medical Center's hospital building. In June 2018, Mallory filed a complaint asserting negligence against Rush. As discussed further, the ensuing litigation has not gone smoothly (to put it mildly).

At issue here are motions and requests filed by both parties. Mallory moves to vacate four orders the magistrate judge entered sanctioning her or her counsel on the basis that the magistrate judge did not have authority to issue the orders. Rush moves to dismiss this case with prejudice as a sanction under Federal Rule of Civil Procedure 41(b) or the Court's inherent authority.[1] Rush also seeks sanctions under Federal Rule of Civil Procedure 11 awarding the attorneys' fees it incurred in responding to Mallory's motion to vacate and replying to Mallory's opposition to Rush's motion to dismiss. Because Mallory did not raise her challenge to the magistrate judge's authority before the magistrate judge or in a timely manner before this Court, the Court denies her motion to vacate the magistrate judge's sanctions orders [214]. The Court

---

[1] Mallory filed her response to Rush's motion to dismiss on December 17, 2020, a day after it was due. She then filed a motion asking the Court to accept her December 17 response as timely filed. The Court grants Mallory's motion [221].

also exercises its discretion to deny Rush's requests for Rule 11 sanctions.  However, the Court

grants Rush's motion to dismiss with prejudice [208] because there is a clear record of delay and

contumacious conduct on the part of Mallory's counsel, and less drastic sanctions would be

ineffective.  Therefore, the Court dismisses this case with prejudice pursuant to Rule 41(b).

## BACKGROUND

### I.       Delay, Missed Deadlines, and Requests for Extensions

After Mallory initiated this suit in June 2018, the district judge[2] ordered the parties to

exchange Mandatory Initial Discovery Pilot ("MIDP") disclosures by October 11, 2018 and to

complete all fact discovery, including discovery with respect to Mallory's treating physicians, by

April 12, 2019.  Doc. 16.  The district judge also referred the case to the assigned magistrate

judge for discovery supervision.  As part of this supervision, the magistrate judge ordered each

party to serve written discovery requests by October 18, 2018, serve responses to these requests

by November 18, and identify any issues it had with the opposing party's discovery responses by

December 6.  Doc. 18.

Mallory's counsel, Calvita J. Frederick, failed to comply with these deadlines from the

start; she served Mallory's MIDP disclosures five days late and her written discovery responses

more than two weeks late, and she failed to identify any issues with Rush's written discovery

responses by the December 6 deadline.  *See* Doc. 20 at 2–3; Doc. 20-1 at 1; Doc. 35-1 at 15, 23.

The magistrate judge subsequently gave Frederick until December 31 to identify any such issues,

Doc. 24, but she did not meet this deadline either.  Instead, she requested an extension of the

deadline after it had already passed.  Doc. 25.  The magistrate judge again extended the deadline

for Frederick to identify any issues with Rush's written discovery—this time until January 22,

---

[2] Two other district judges oversaw this case before the Executive Committee assigned it to the
undersigned in October 2019.

2019—but required her to identify these issues in a motion to compel. Doc. 27. Frederick missed this deadline as well. Almost three weeks after the January 22 deadline, Frederick sought another extension of time. Doc. 29. The magistrate judge denied the request this time, noting the previous extensions he had already provided and the importance of "clos[ing] the loop on written discovery before moving forward with oral discovery." Doc. 32. Thereafter, on February 25, 2019, Frederick moved the district judge to extend the fact discovery deadline by sixty days. Doc. 37. The district judge denied her request. Doc. 41.

On March 21, 2019 (shortly before the original close of fact discovery), the magistrate judge expressed his concern with "the level of diligence Plaintiff has exercised in meeting her discovery obligations" regarding the disclosure of her treating physicians, Doc. 47 at 1–2, and he extended the fact discovery deadline by two months at Rush's request because of Mallory's failure to accurately and timely disclose her treating physicians, Doc. 48 at 10; Doc. 54. Fact discovery closed on June 11, 2019.

As the litigation progressed, Mallory's counsel continued to show an inability to meet the deadlines set by the judges overseeing the case, and she regularly sought last-minute extensions when she ran up against these deadlines. On the day Mallory's Rule 26(a)(2)(C) expert disclosure was due, June 20, 2019, Frederick sought a seven-day extension to serve the disclosure, claiming that she severely sprained her foot, was on pain medication, and her car malfunctioned and stranded her on the highway the day before the disclosure was due. Doc. 58. Consequently, she was "distracted and unable to focus and complete the disclosures in the time allotted." *Id.* at 2. The magistrate judge granted the request. Doc. 60. Yet, despite the extension, the record indicates that Mallory never served an expert disclosure.

3

On July 29, 2019, Rush moved for summary judgment. Doc. 67. The district judge gave Mallory until August 22 to respond, Doc. 72, but she did not meet this deadline. Instead, Frederick waited until the day before the response was due to seek a twenty-one-day extension. Doc. 73. She claimed that "an unusually heavy workload, which included a number of lengthy pleadings and several emergency matters" prevented her from completing her response on time. *Id.* at 1. The district judge gave Mallory an additional four weeks to respond to Rush's summary judgment motion,[3] Doc. 75, but Frederick again could not meet the deadline, claiming an "unusually heavy workload, which included a number of lengthy pleadings and several emergency matters" (again) coupled with the effort it took to send her two daughters off to college, Doc. 78 at 1–2. She sought a three-day extension, which the district judge granted. *Id.* at 2; Doc. 83.

On February 19, 2020, the Court denied Rush's motion for summary judgment because factual issues existed regarding whether the puddle on which Mallory slipped was open and obvious, whether Rush had notice of the puddle, and whether Mallory's slip and fall proximately caused her injuries. Doc. 88. In light of the Court's summary judgment ruling, Rush re-filed a motion to compel that the magistrate judge had denied without prejudice in July 2019 because of Rush's pending summary judgment motion. Docs. 65, 71. The motion asked the magistrate judge to compel Mallory to execute and produce authorizations to obtain certain medical records. Doc. 65 at 1; Doc. 91 at 1. The day her response was due (March 6, 2020), Frederick sought a five-day extension due to an "unusually busy" schedule in the last two weeks. Doc. 93 at 1. The magistrate judge granted the motion and was even more accommodating than Frederick requested, as he gave her until March 20 to file her response. Docs. 95, 96.

---

[3] In her motion for an extension of time, Frederick asserted that Rush's summary judgment motion relied upon exhibits that it did not file with its motion. The four weeks gave Rush one week to file any exhibits that were not already on file, and Mallory three weeks to respond after that.

On March 16, 2020, the Chief Judge of the District Court issued Amended General Order 20-0012, which addressed the COVID-19 public emergency. Doc. 97. Although the amended general order extended currently set deadlines by twenty-one days, *id.* at 1 (¶ 1), it did not affect the authority of judges to otherwise enter orders in their cases, *id.* at 4 (¶ 10). The magistrate judge immediately thereafter ordered that Mallory's March 20 response date still stood. Doc. 98. But Mallory did not file a response by March 20, and the magistrate judge granted Rush's motion to compel on March 22. Doc. 100. The magistrate judge gave Mallory until April 13 to execute and return the necessary medical authorizations.

Mallory did not comply with this deadline either. Instead, on the day the authorizations were due, she moved to vacate the magistrate judge's March 22 order because, among other things, the magistrate judge should have given her additional time to respond given the extended deadlines provided by the District's COVID-19 general orders and because Frederick "is in a high-risk category for exposure to Covid-19 [for] several reasons, has not been feeling very well, has been working very little, and has no way to do legal research from home." Doc. 103 at 2–3. The magistrate judge denied Mallory's motion to vacate and, accounting for the extension of deadlines authorized by the District's second amended general order regarding COVID-19, gave Mallory until May 11 to return the executed authorizations required by the March 22 order. Docs. 107, 109. On May 11, however, Mallory provided an improperly executed authorization, and the hospital that maintained the records at issue would not produce the records based on the invalid authorization. Doc. 119 at 2–3. This necessitated yet another motion to compel from Rush, and it does not appear that Mallory provided a proper authorization until late June 2020.[4]

---

[4] On or about July 1, Rush informed the magistrate judge that it wished to withdraw its motion to compel. Doc. 122. The Court presumes Rush did so because Mallory had provided a properly executed authorization by then.

Meanwhile, Mallory moved on May 11, 2020 for leave to re-open discovery, arguing that because her treatment was ongoing, new treaters had emerged, and that Rush had recently disclosed previously undisclosed witnesses and record custodians. Doc. 111. The magistrate judge denied the motion without prejudice because the issue of whether to re-open fact discovery was not yet ripe based on the parties' briefing. Doc. 117. Mallory later renewed her motion, asking for discovery to re-open so that she could depose the new medical providers who had been treating her since September 2019 and obtain discovery from the witnesses Rush had recently disclosed. Doc. 135.

On July 15, 2020, Rush served a Rule 26(a)(2)(B)–(C) disclosure and report from its retained medical expert witness, Dr. Scott Cordes. Doc. 138 at 1; Doc. 179-1 at 28–40. After Frederick issued a subpoena seeking certain records from Dr. Cordes, Rush moved to quash the subpoena. Doc. 138 at 1–2. On the same day it moved to quash the subpoena (August 4), Rush also moved to strike Mallory's second supplemental responses to interrogatories and requests for production. Doc. 136. The magistrate judge gave Mallory until August 11 to respond to Rush's motion to quash because Dr. Cordes' deposition was scheduled for August 17, and until August 19 to respond to Rush's motion to strike. Doc. 139. Frederick sought an extension for Mallory's response to the motion to quash, which the magistrate judge extended to August 19 based on her demonstration of good cause. Docs. 140, 142. Frederick filed this response on August 19, but she also moved for an additional eight days to finish Mallory's response to Rush's motion to strike. Doc. 147. In doing so, Frederick misrepresented that the magistrate judge had only given her seven days to respond to the motion to strike (he had given her fifteen days) and asserted that her ability to prepare the response "should not be prejudiced by a time crunch she did not create." *Id.* at 2–3. Notably, however, Frederick was able to file a fifteen-page motion to strike

6

Dr. Cordes' expert opinion on August 21, just two days after the August 19 deadline. Doc. 151. Even so, the magistrate judge gave Mallory until August 28 to file her response to Rush's motion to strike. Doc. 154.

On September 9, 2020, the magistrate judge denied Mallory's request to depose her own treating providers—whom Mallory had known about since September 2019—because her "lack of diligence in prosecuting this case" did not provide good cause for the request. Doc. 165 at 1. Nonetheless, the magistrate judge did grant Mallory's request to re-open discovery in part so that she could depose Rush's newly disclosed witnesses. Yet, despite this ruling, it does not appear that Frederick ever deposed these witnesses. In fact, it does not appear that she has taken a single deposition in this case.

On September 11, 2020—more than two years into the litigation—Frederick filed a notice purporting to voluntarily dismiss Mallory's action without prejudice under Rule 41(a)(1)(A). Doc. 172. The magistrate judge explained that the notice of dismissal was ineffective because, at this stage of the litigation, a court order was necessary to dismiss the action. Doc. 174 (citing Fed. R. Civ. P. 41(a)(1)(A)(i)). Frederick thereafter filed a motion for voluntary dismissal without prejudice with this Court. Doc. 175. On November 9, the Court found that dismissal without prejudice was inappropriate because, among other things, "the record [was] replete with instances of delay and lack of diligence," "the dismissal request was a desire to use the September 11 motion for reconsideration as 'a vehicle to spew parting shots' at the magistrate judge" (more on this below), and the Court was concerned that Frederick believed dismissal "would enable her to 'evade the rulings of this court' or be assigned 'a different set of judges' when refiling her case." Doc. 211 at 7–8, 10–12 (citations omitted). The Court gave Mallory the opportunity to withdraw her motion, which she did on November 17. Doc. 213.

7

The same day, though, Mallory moved to vacate four sanctions orders issued by the magistrate judge between August 2020 and October 2020. Doc. 214.

## II.      The Magistrate Judge's Sanctions Orders

The four sanctions orders Mallory challenges all relate to Frederick's conduct in connection with Rush's retained medical expert witness, Dr. Cordes.

***The August 24 Order.***  As noted, after Frederick issued a subpoena seeking certain documents from Dr. Cordes, Rush moved to quash the subpoena.  On August 24, the magistrate judge granted Rush's motion and ordered Mallory to pay the attorneys' fees Rush incurred in filing the motion (the "August 24 Order").  Doc. 156.  The magistrate judge found the subpoena improper because Dr. Cordes' expert report presumably included the information required by Rule 26(a)(2)(B), and Mallory failed to identify any subpoenaed document or information on which Dr. Cordes relied that she did not "already possess or have access to in this litigation." *Id.* at 1.  The magistrate judge based his fee award on Federal Rule of Civil Procedure 45(d)(1), *id.*, which requires "[t]he court for the district where compliance" with a subpoena is required to enforce the issuing attorney's duty to "avoid imposing undue burden or expense" on the subpoenaed party by "impos[ing] an appropriate sanction," such as an award of reasonable attorneys' fees, on an attorney who fails to comply with this duty, Fed. R. Civ. P. 45(d)(1).  The magistrate judge ordered Rush to file a petition for fees, which it did (requesting $7,400 in fees), and Mallory to respond to the petition, which she did not do.  After reviewing Rush's fee petition, the magistrate judge awarded Rush $3,148 in attorneys' fees.  Doc. 173.

***The September 30 Order.***  On September 11, Mallory filed a motion asking the magistrate judge to reconsider the August 24 Order granting Rush's motion to quash.  Doc. 171. In entering and continuing the motion for reconsideration, the magistrate judge explained that if

he denied the motion, he would "provide Defendant an opportunity to submit a second fee petition for attorney fees it incurs in connection with the response to the motion." Doc. 174.

On September 30, the magistrate judge denied Mallory's motion for reconsideration. Doc. 195. The magistrate judge concluded that the motion "largely rehashe[d] the same arguments" he rejected in ruling on Rush's motion to quash and raised a new argument that he rejected "as unfounded" in his ruling on another motion. *Id.* at 3–5. Because he denied the motion for reconsideration, the magistrate judge permitted Rush to submit a "second fee petition for fees incurred in responding to Plaintiff's motion for reconsideration" (the "September 30 Order"). Doc. 194. The September 30 Order did not expressly identify the statutory authority for this award of fees, but the magistrate judge later clarified that this award was also pursuant to Rule 45(d)(1). Doc. 199. The magistrate judge permitted Rush to file a second petition for fees in connection with the motion for reconsideration, which it did (requesting $4,221 in fees), Doc. 198 at 7, and Mallory to respond to the petition, which she (again) did not do. The magistrate judge awarded Rush $3,387 in attorneys' fees and explained that Frederick, not Mallory, was to pay the attorneys' fees awarded by both the August 24 and September 30 Orders ($6,535 in total) because she was "the individual who failed to comply with Rule 45." Doc. 199.

***The October 19 Order.*** On September 9, Rush moved to compel Mallory to pay Dr. Cordes a cancellation fee because Frederick improperly cancelled his deposition. Doc. 167 at 1. Specifically, Frederick scheduled Dr. Cordes' deposition for August 17, 2020; Rush confirmed that Dr. Cordes would appear for the scheduled deposition and informed Frederick that if she cancelled the deposition after August 10, it would charge her a $2,000 cancellation fee to compensate Dr. Cordes for the time he was not able to see patients on August 17; and then, without giving Rush advance notice, Frederick filed a motion at 11:12 p.m. on August 10 asking

9

for an extension of time to depose Dr. Cordes, in which she indicated that she could not take Dr. Cordes' deposition on August 17.

On October 19, the magistrate judge granted Rush's motion in part and ordered Mallory to pay Rush $1,000 "for failing to timely cancel Dr. Cordes'[] deposition" (the "October 19 Order"). Doc. 200; Doc. 201 at 8. The magistrate judge based this award on Federal Rule of Civil Procedure 26(b)(4)(E), which "requires a party taking an expert witness'[] deposition to 'pay the expert a reasonable fee for time spent in responding to discovery' . . . except where 'manifest injustice would result,'" Doc. 201 at 4 (quoting Fed. R. Civ. P. 26(b)(4)(E)(i)), and his "inherent power to require Plaintiff to pay a fee for an untimely cancellation of an expert witness deposition," *id.* at 5.

**The October 20 Order.** On August 21, Mallory moved to strike the expert opinion and bar the testimony of Dr. Cordes. Doc. 151. Mallory argued that Dr. Cordes' expert report was deficient because it did not disclose several items required by Rule 26(a)(2). Mallory also accused Rush of violating her privacy rights under the Health Insurance Portability and Accountability Act ("HIPAA") by obtaining her medical records without authorization and providing them to Dr. Cordes for review. Mallory represented that she had filed a complaint with the U.S. Department of Health and Human Services' Office of Civil Rights and was seeking payment of more than $1.75 million for Rush's allegedly willful HIPAA violations.[5] Rush responded to Mallory's motion but also moved separately for an entry of sanctions, arguing that Mallory's motion to strike violated Rule 11. Docs. 179, 180.

On September 21, the magistrate judge denied Mallory's motion to strike. Doc. 188. The magistrate judge noted that the court had entered a HIPAA order in August 2018, which

---

[5] Mallory did not provide the magistrate judge or Rush with a copy of the HIPAA complaint. Doc. 180 at 11; Doc. 188 at 5.

permitted Rush to seek Mallory's "private health information for the purpose of litigating this case," and that Mallory's failure to address this order in her motion violated the American Bar Association's Model Rule of Professional Conduct 3.3(a)(2),[6] *id.* at 3–4, which prohibits an attorney from knowingly "fail[ing] to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel," Model Rules of Pro. Conduct r. 3.3(a)(2) (Am. Bar Ass'n 9th ed. 2019). Moreover, Mallory waited more than a year-and-a-half after she received notice of Rush's medical record subpoenas before asserting the purported HIPAA violations. As for Dr. Cordes' expert opinion, the magistrate judge denied Mallory's "request to strike Dr. Cordes'[] report or bar his testimony as frivolous." Doc. 188 at 5–6. The magistrate judge also rejected Mallory's claim that Rush was required to provide free copies of the documents Dr. Cordes considered in his report.

On October 20, the magistrate judge granted Rush's related motion for sanctions (the "October 20 Order"). Doc. 203. The magistrate judge concluded that Mallory's motion to strike Dr. Cordes' expert opinion warranted sanctions "pursuant to Rule 11 and the court's inherent authority" because "Plaintiff's arguments were frivolous and not well-founded." *Id.* at 4. In particular, "Plaintiff lacked evidentiary support for her repeated assertions that [Rush] obtained her medical records without authorization" and groundlessly claimed that Dr. Cordes' expert report did not comply with Rule 26(a)(2)(B). *Id.* at 4–5.

The magistrate judge ordered Frederick to pay Rush its attorneys' fees and expenses associated with Mallory's motion to strike and Rush's subsequent Rule 11 motion, Doc. 203 at 6, and permitted Rush to file a third petition for fees, which it did, requesting $13,457 in fees, Docs.

---

[6] The American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules") govern the conduct of attorneys practicing in the Northern District of Illinois. N.D. Ill. L.R. 83.50; *Hernandez v. Helm*, No. 18 C 7647, 2019 WL 5922233, at *2 (N.D. Ill. Nov. 12, 2019).

202, 204. The magistrate judge also allowed Mallory to respond to Rush's petition for fees, but she refused to do so for a third time. On November 4, the magistrate judge awarded Rush $9,206 in fees in connection with its Rule 11 motion. Doc. 207. In the same order, the magistrate judge closed the discovery referral and returned the case to the Court.

In total, the magistrate judge ordered Mallory and Frederick to pay $16,741 in attorneys' fees. It appears that Frederick has paid all amounts due,[7] although she had to seek two extensions of time to comply with the deadlines for payment along the way. Docs. 205, 216.

### III. Frederick's Allegations Against the Magistrate Judge

Since the beginning of this litigation, Frederick has repeatedly expressed her belief that the magistrate judge is biased against her and her client, who are both African American females. In her February 25, 2019 motion to extend the fact discovery deadline, Frederick asserted that the magistrate judge appeared "ready and willing to favor procedure over substance and chop the Plaintiff off at the knees" and that she did not believe Mallory could "get a fair hearing in fro[nt] of" the magistrate judge. Doc. 37 at 5–6. Later, in her April 13, 2020 motion to vacate the magistrate judge's March 22, 2020 order granting Rush's motion to compel, Frederick asserted that the ruling "singled Plaintiff and/or her counsel out for disparate treatment." Doc. 103 at 3. Three months later, in a July 13 email to the magistrate judge and opposing counsel, Frederick asked that the case be removed from the magistrate judge "for bias." Doc. 190-1 at 66. The following day, in an email to Rush's counsel, Frederick claimed that certain actions by the magistrate judge were improper and that she was going to "move outside of the court" to have

---

[7] Frederick has submitted proof that she paid $12,243 by December 31, 2020. Doc. 223-10. The remaining balance was not due until February 1, 2021. Doc. 207. Frederick did not seek an extension of the February 1 due date, and Rush has not notified the Court that Frederick failed to meet this deadline, so the Court assumes she did.

the magistrate judge removed for bias. *Id.* at 75. Yet at no point in this litigation has Frederick ever formally moved to have the magistrate judge recuse himself or be disqualified.

As noted, Mallory filed a motion on September 11, 2020, asking the magistrate judge to reconsider his order granting Rush's motion to quash her subpoena to Dr. Cordes. In this motion, Frederick's assertions of bias against the magistrate judge dropped to a new, troubling level. The magistrate judge characterized these assertions as "vitriolic attacks" on him that disrupted "the administration of justice" and violated several model rules of professional conduct, such as ABA Model Rules 3.5(d), 8.2(a), and 8.4(d).[8] Doc. 184 at 1. The Court agrees with the magistrate judge's assessment; most egregious in the Court's eyes were Frederick's implication that the magistrate judge has exhibited bias based on racism ("It is easy for this Court to presume the defendant has acted properly and Plaintiff has not because of its implicit bias, displayed so frequently herein. . . . The racism that overruns the criminal justice system in this country is alive and well in the civil arena as well."), Doc. 171 at 9–10, and the motion's concluding sentence which, apparently comparing the magistrate judge to the police officers involved in the tragic death of George Floyd, stated that the magistrate judge's "knee is on my neck and I cannot breathe," *id.* at 10.

Frederick filed the motion for reconsideration eight minutes before she filed the notice purporting to voluntarily dismiss Mallory's action without prejudice. Given this timing, the magistrate judge found—and this Court later agreed—that "the motion for reconsideration was merely a vehicle to spew parting shots at" the magistrate judge and that Frederick appeared to

---

[8] ABA Model Rule 3.5(d) prohibits a lawyer from "engag[ing] in conduct intended to disrupt a tribunal." Model Rules of Pro. Conduct r. 3.5(d) (Am. Bar Ass'n 9th ed. 2019). ABA Model Rule 8.2(a) prohibits a lawyer from "mak[ing] a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." *Id.* r. 8.2(a). ABA Model Rule 8.4(d) deems it professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." *Id.* r. 8.4(d).

"mistakenly believe[] that by dismissing the case [] she can evade the rulings of this court or that a different set of judges would be assigned to the case when reinstated."[9]  Doc. 184 at 1; Doc. 211 at 10–11.  However, so that Frederick could "avoid consequences she may not have appreciated" when she filed the motion for reconsideration, the magistrate judge gave her until September 17 to withdraw or amend her motion.  Doc. 184 at 1.  Frederick did not take this opportunity, and, according to Frederick, the magistrate judge filed a complaint with Illinois' Attorney Registration and Disciplinary Commission ("ARDC") against her on September 23.  A week earlier, and the day before the deadline to withdraw or amend her motion, Frederick filed a judicial misconduct complaint against the magistrate judge.  The Chief Judge of the Seventh Circuit, however, found that nothing in Frederick's complaint supported her allegations of bias and dismissed the complaint.

In her reply in support of her motion for voluntary dismissal, Frederick continued to allege bias against the magistrate judge, as well as opposing counsel, often linking the alleged bias to race.  As just some examples, Frederick asserted that

- it is likely that certain actions performed by the magistrate judge were "based upon racism," Doc. 197 at 9–10;

- "[l]ily white firms like that of Defendant's counsel are accustomed to the privileges they enjoy, including being directed by the Court as to what motions to file, and cry file [sic] when Black lawyers argue unfair treatment, and obvious implicit bias, more likely than not based upon race," *id.* at 10; and

- that "as a white male lawyer[,] Defendant's counsel believes he gets to tell everyone what to do, most especially a Black female

---

[9] In her reply in support of her motion to vacate, Frederick claims for the first time that she did not intend for the motion for reconsideration to be a "parting shot" against the magistrate judge before she dismissed the case; rather, she filed the motion merely "to preserve the record."  Doc. 223 at 3.  The Court finds this assertion disingenuous.  The motion for reconsideration was not necessary to preserve any issues regarding the magistrate judge's order for appeal.  As Frederick herself asserts, Mallory's response to Rush's motion to quash already accomplished this.  *Id.* at 5.  At any rate, Frederick's inflammatory statements were in no way necessary to preserve issues for appellate review.

14

> lawyer who has managed to defeat his summary judgment motion
> and keep her client's case alive for more than two years," *id.* at 15.

Frederick also accused the magistrate judge of retaliating against her by filing an ARDC complaint and sanctioning her. In ruling on Mallory's motion for voluntary dismissal, the Court warned Frederick that if she "criticize[d] or challenge[d] a judge's or opposing counsel's handling of a matter," she had to do so respectfully, and that the Court would not tolerate similar mudslinging moving forward. Doc. 211 at 13.

The warning fell on deaf ears. In Mallory's subsequently filed opposition to Rush's motion to dismiss with prejudice, Frederick accuses the magistrate judge of becoming "angry and threaten[ing] Plaintiff lest she retreat from her complaints about his behavior" and then "issu[ing] voluminous sanctions against Plaintiff and her counsel" when Frederick "refused to be bullied." Doc. 220 at 11. Frederick similarly uses the reply in support of Mallory's motion to vacate to accuse the magistrate judge of trying to "bully counsel with the threat of [an] ARDC complaint for daring to object to his practices and question his motivation," Doc. 223 at 3–4, and of threatening her and "us[ing] his robe to restrict Plaintiff's constitutional right to freedom of speech," *id.* at 9–10. And in both filings, Frederick disrespectfully refers to the magistrate judge by only his last name on multiple occasions. Doc. 220 at 11; Doc. 223 at 5, 7.

## IV. The Parties' Current Motions

On November 6, 2020, Rush moved to dismiss Mallory's case with prejudice. Doc. 208. Mallory responded on December 17, a day after her response was due. Doc. 220. Although Frederick thought she had completed the filing by the deadline, she learned the next morning that the filing was incomplete, which she suggested was caused by "a number of unexplained temporary periods [of] 'no internet connection'" that her computer had been experiencing. Doc. 221 at 1–2. The same day Frederick filed her response, Rush sent her a Rule 11 "safe harbor"

15

letter. Doc. 222-2. The letter asserted that Frederick's response brief contained false and misleading assertions and unprofessional personal attacks, and it asked Frederick to withdraw or correct her response by January 5, 2021[10] to avoid further sanctions. She did not do so, and in addition to seeking dismissal with prejudice, Rush's reply brief asks for an order under Rule 11 compelling Mallory "to pay all of the attorneys' fees caused by Rush replying to [her] response brief." Doc. 222 at 9.

On November 17—the same day she withdrew her motion to voluntarily dismiss this case—Mallory moved to vacate the magistrate judge's August 24 Order, September 30 Order, October 19 Order, and October 20 Order on the basis that the magistrate judge could not award sanctions on his own but could only recommend sanctions for this Court to review. The following day, Rush served Frederick with another "safe harbor" letter under Rule 11. Doc. 219-1 at 55–56. The letter, which asserted that Mallory's motion to vacate violated Rule 72 and that Mallory waived her objections by paying and seeking extensions to pay the ordered sanctions, asked Frederick to withdraw or correct the motion by December 11. Frederick did not do so. Rush now opposes Mallory's motion to vacate and, as part of its opposition, seeks Rule 11 sanctions in connection with filing this opposition.[11]

## ANALYSIS

First, the Court addresses Mallory's motion to vacate the magistrate judge's sanctions orders. Second, the Court addresses Rush's motion to dismiss Mallory's case with prejudice. Finally, the Court addresses Rush's requests for Rule 11 sanctions in connection with these two motions.

---

[10] The letter mistakenly asks for withdrawal or correction by January 5, 2020.

[11] At the November 18, 2020 telephonic hearing in this case, the Court permitted Rush to use its opposition to Mallory's motion to vacate to request Rule 11 sanctions.

## I.      Mallory's Motion to Vacate the Magistrate Judge's Sanctions Orders

### A.      Standard of Review

Before addressing the merits of Mallory's motion to vacate, the Court must determine the appropriate standard of review.  Rush contends that Federal Rule of Civil Procedure 72 governs the Court's review.  Mallory, however, claims that she filed her motion pursuant to Rules 59(e) and 60, not Rule 72: "Without any reference to Fed. R. Civ. P. Rules 59(e) and 60, *the rules under which Plaintiff seeks relief*, Defendant appears to be confused about the basis for this motion and responded as if Plaintiff's motion is based upon Federal Rule[] of Civil Procedure 72, which it is not."  Doc. 223 at 1 (emphasis added).

Mallory's attempts to invoke Rules 59(e) and 60 and fault Rush for its reliance on Rule 72 are meritless.  Although Mallory claims on the first page of her opening motion and her reply that she seeks relief under these rules, she does not thereafter cite—in either filing—to Rules 59(e) and 60 or any cases interpreting these rules.  Nor does she discuss any aspect of these rules in her briefing.  The Court will not analyze Mallory's motion based on Rules 59(e) and 60 when she makes no attempt to explain their applicability or the standards they impose.  *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Moreover, Mallory implicitly concedes that Rule 72 governs the issues here.  She cites to Rule 72 under the "Legal Standard" portion of her opening motion, and she argues that Rule 72 establishes "an 'abuse of discretion' standard" for the Court to consider in reviewing the magistrate judge's rulings.  Doc. 214 at 2, 4; Doc. 223 at 10.  She also repeatedly cites to 28 U.S.C. § 636(b)(1), which Rule 72 implements.  *Mitchell v. Valenzuela*, 791 F.3d 1166, 1169 n.2 (9th Cir. 2015); *Cage v. Harper*, No. 17-cv-7621, 2020 WL 1248685, at *3–4 (N.D. Ill. Mar. 16,

2020) (explaining the connection between 28 U.S.C. § 636(b)(1) and Rule 72); 12 Richard L.

Marcus, *Federal Practice and Procedure* § 3068 (3d ed. Oct. 2020 update) ("Rule 72 was

designed to implement the legislative mandate of Section 636(b)(1), [which] clarified and

expanded the authority that a district judge may delegate to a magistrate judge in pretrial

matters.").

The Court, therefore, concludes that Rule 72 governs its review of Mallory's motion to

vacate. *See Belcastro v. United Airlines, Inc.*, No. 17-cv-01682, 2020 WL 1248343, at \*2 (N.D.

Ill. Mar. 15, 2020) ("Federal Rule of Civil Procedure 72 governs this Court's review of rulings

by magistrate judges."). The Court reviews a magistrate judge's ruling on a nondispositive

matter for clear or legal error, whereas the Court reviews a magistrate judge's ruling on a

dispositive matter *de novo*. *Id.*; Fed. R. Civ. P. 72. If a party disagrees with a magistrate judge's

ruling on either type of matter, she must object to the ruling within fourteen days. Fed. R. Civ.

P. 72(a), (b)(2); Marcus, *supra*, § 3070.1 (noting that both Rule 72(a) and Rule 72(b)(2) require

an objecting party to serve and file objections within fourteen days).

### B.      Mallory's Arguments

Mallory argues that the Court should vacate the August 24 Order, September 30 Order,

October 19 Order, and October 20 Order because the magistrate judge lacked the authority to

independently award monetary sanctions.[12] Rule 72 and 28 U.S.C. § 636 delineate the scope of a

---

[12] Mallory also asserts that the fees awarded by the magistrate judge "are grossly excessive, unfair, and in
retaliation for the allegations of bias[] made by [her] counsel." Doc. 214 at 7; *see also* Doc. 223 at 7
("[T]he awarding of sanctions in the amount of $6,535.00 for a 7-page motion and $9,106.[00] [f]or a 12-
page motion is excessive by any standards [sic] and is further evidence of extreme bias on the part of [the
magistrate judge]."). The Court does not consider this perfunctory and undeveloped assertion, *Schaefer*,
839 F.3d at 607, especially as Mallory did not challenge any of the fees Rush sought in its three fee
petitions, *see United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[A]rguments not made
before a magistrate judge are normally waived . . . [and] district courts should not consider arguments not
raised initially before the magistrate judge.").

magistrate judge's authority and powers. *Cage*, 2020 WL 1248685, at *3–4. Under Section 636(b)(1)(A), a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court" except for eight particular types of motions.[13] 28 U.S.C. § 636(b)(1)(A). Pretrial matters that a magistrate judge may hear and rule *directly* on are nondispositive matters, and the district judge reviews the magistrate judge's ruling on these matters for clear and legal error. *Id.*; Fed. R. Civ. P. 72(a); *United States v. Brown*, 79 F.3d 1499, 1503 (7th Cir. 1996). The motions § 636(b)(1)(A) excludes, as well as other motions that are sufficiently analogous to these motions, are dispositive matters. *Cage*, 2020 WL 1248685, at *3; *Belcastro*, 2020 WL 1248343, at *2. Although a magistrate judge may hear dispositive matters, he may only make proposed findings and recommendations that the district judge must then review *de novo* and accept, reject, or modify. 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Civ. P. 72(b)(1), (3); *Belcastro*, 2020 WL 1248343, at *2. "In sum, a magistrate judge, on a matter referred from the district judge, may issue an order for a nondispositive pretrial matter, whereas a magistrate judge may only enter a recommended disposition for a dispositive pretrial matter."[14] *Cage*, 2020 WL 1248685, at *4.

Here, the magistrate judge issued four orders (not recommendations) sanctioning Mallory and her counsel—the August 24 Order, September 30 Order, October 19 Order, and October 20

---

[13] These are motions (1) for injunctive relief, (2) for judgment on the pleadings, (3) for summary judgment, (4) to dismiss or quash an indictment or information made by the defendant, (5) to suppress evidence in a criminal case, (6) to dismiss or to permit maintenance of a class action, (7) to dismiss for failure to state a claim upon which relief can be granted, and (8) to involuntarily dismiss an action. 28 U.S.C. § 636(b)(1)(A).

[14] "[T]he Court uses the term 'order' to denote a decision under 28 U.S.C. § 636(b)(1)(A) that is nondispositive and within the authority of a magistrate judge to decide, as opposed to ['recommendation' or] 'recommend,' which signifies a dispositive matter for which a magistrate judge must issue a report and recommendation under Section 636(b)(1)(B)." *Cage*, 2020 WL 1248685, at *2 n.1.

Order.[15]  Mallory contends that the magistrate judge did not have the authority to independently

order her or her counsel to pay sanctions; rather, he could only *recommend* sanctions, which this

Court would then have to review *de novo*.  To support this contention, Mallory relies upon three

Seventh Circuit cases: *Alpern v. Lieb*, 38 F.3d 933 (7th Cir. 1994); *Retired Chicago Police Ass'n*

*v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996); and *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879 (7th

Cir. 1999).

In *Alpern*, the Seventh Circuit held that a post-dismissal award of sanctions under Rule

11 was not a matter upon which a magistrate judge could "make a decision with independent

effect."  38 F.3d at 934–35.  Instead, the *Alpern* court continued, "[t]he power to award

sanctions, like the power to award damages, belongs in the hands of the district judge."  *Id.* at

935.  Two years later, in *Retired Chicago Police Ass'n*, the Seventh Circuit addressed a

magistrate judge's order awarding sanctions under Rule 11 and 28 U.S.C. § 1927.  76 F.3d at

861, 868.  The court characterized *Alpern*'s holding in this way: "a district judge may not refer a

dispute regarding sanctions to a magistrate judge under § 636(b)(1)(A) because the grant or

denial of a request constitutes a dispositive matter."  *Id.* at 868 (citing *Alpern*, 38 F.3d at 935).

The *Retired Chicago Police Ass'n* court also explained that its analysis in *Alpern* "encompassed

all sanctions requests, whether pre- or postdismissal," and then proceeded to state that

"resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate

judge . . . , where the district judge must review the magistrate judge's report and

recommendations *de novo*."  *Id.* at 869.  And in *Gorbitz*, the Seventh Circuit cited *Alpern* to

summarily reject the defendant's argument that the district judge should have permitted the

---

[15] The Court's November 9, 2020 opinion did not, as Rush asserts, "implicitly affirm[]" the sanctions that these orders awarded.  Doc. 219 at 7.  Mallory had not yet challenged the propriety of the sanctions orders, so the Court did not (and had no reason to) consider the issue.

magistrate judge to rule on its motion for sanctions "because a magistrate judge is without the authority to award sanctions." 196 F.3d at 882–83 (citing *Alpern*, 38 F.3d at 935).

Although one could read the Seventh Circuit's broad pronouncements in these cases as defining *all* sanctions disputes as dispositive matters for which a magistrate judge must issue a recommendation, the district courts in the Seventh Circuit are split on the issue. *Cage*, 2020 WL 1248685, at *1, *5 (citing cases); *compare, e.g.*, *id.* at *6–7, *20 (concluding that "a Rule 37 award is within a magistrate judge's power to issue as [an] order[] because it is a pretrial nondispositive matter" and that *Alpern* and *Retired Chicago Police Ass'n* do not foreclose this conclusion), *with Barmore v. City of Rockford*, No. 09 CV 50236, 2014 WL 12791639, at *4 (N.D. Ill. Aug. 20, 2014) (citing *Retired Chicago Police Ass'n* for the proposition that "[i]n the Seventh Circuit, motions for sanctions under Rule 37 are considered 'dispositive'" and require a recommendation from the magistrate judge). But the Court does not need to definitively decide whether the magistrate judge's orders in this case should have been recommendations because Mallory never made this argument in briefing any of the sanctions orders she now challenges. She did not bring it to the magistrate judge's attention in opposing Rush's motion to quash, Doc. 150, in asking the magistrate judge to reconsider his order granting Rush's motion to quash, Doc. 171, in opposing Rush's motion to compel payment of its expert's cancellation fee, Doc. 191, or in opposing Rush's motion for Rule 11 sanctions, Doc. 196.

"To reverse the [magistrate judge] on grounds not presented to [him] would undermine the essential function of the" magistrate judge in this litigation, which was to decide discovery-related issues in the first instance. *See Boyers v. Texaco Refin. & Mktg., Inc.*, 848 F.2d 809, 812 (7th Cir. 1988). Moreover, "a willingness to consider new arguments at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are

taken as established unless the party files objections to them." *Melgar*, 227 F.3d at 1040. As such, "arguments not made before a magistrate judge are normally waived . . . [and] district courts should not consider arguments not raised initially before the magistrate judge." *Id.*

This is not a hard-and-fast rule, *see id.*, but the Court sees no reason to depart from it here. If Mallory had raised the argument about the magistrate judge's authority to independently issue sanctions during the relevant briefing, the magistrate judge could have considered the applicable case law, determined the scope of his authority, and ruled accordingly. But Mallory did not raise the argument, so the magistrate judge did not have an opportunity to consider it. The Court will not evaluate the magistrate judge's rulings based on an alleged error that Mallory never brought to the magistrate judge's attention. *See Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1298 (7th Cir. 1992) ("We will not undo the district court's work based on an argument [the plaintiff] never made in that court."); *cf. Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (noting that in our adversary system, courts "rely on the parties to frame the issues for decision"). Doing so would simply waste more judicial resources in a case that has used up too many of those resources already. *See Thomas v. Arn*, 474 U.S. 140, 148 (1985) ("[F]orc[ing] the court of appeals to consider claims that were never reviewed by the district court . . . would be an inefficient use of judicial resources.").

Mallory attempts to justify her failure to raise the lack-of-authority argument before the magistrate judge based on her belief "that any opposition to [the magistrate judge's] rulings would result in further monetary sanctions . . . and that she had to wait until the matter had been returned to the district judge." Doc. 223 at 9. But even if the Court found that Mallory's (or more precisely, Frederick's) belief had any basis—and the Court does not—this belief does not excuse her failure to raise the lack-of-authority argument before the magistrate judge. A party

22

cannot decline to raise an argument it wishes to preserve for later review simply because she believes the judge will not like the argument: "[w]hile a party may believe it would be futile . . . and that the objection may irritate the court, it is still incumbent upon the party to make the objection in order to preserve the issue for appeal." *Divane v. Krull Elec. Co.*, 194 F.3d 845, 849 (7th Cir. 1999) (citations omitted). In other words, a desire to avoid "the wrath of [a] judge" does not excuse a party's failure to raise an argument before that judge for purposes of later review. *See United States v. Warner*, 855 F.2d 372, 374 (7th Cir. 1988). Regardless of how she thought the magistrate judge would react, Mallory should have brought the lack-of-authority argument to his attention if she wanted this Court to vacate his rulings on that basis.

Compounding Mallory's failure to raise her lack-of-authority argument before the magistrate judge is her failure to file timely objections with this Court based on this argument. Rule 72 requires a party to file objections to both dispositive and nondispositive rulings by a magistrate judge within fourteen days of the ruling. Fed. R. Civ. P. 72(a), (b)(2); *Marcus*, supra, § 3070.1. And the Court is only obligated to consider *timely* objections to a magistrate judge's ruling. Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections."); *Meece v. Ray's, LLC*, No. 1:15-cv-00144-JMS-MJD, 2016 WL 760950, at *1 (S.D. Ind. Feb. 19, 2016) ("*If* a timely objection is made [to a magistrate judge's recommendation], the Court must conduct a *de novo* review." (emphasis added)). Consequently, a party generally forgoes its right to have a district judge review a magistrate judge's ruling by failing to object within the fourteen-day time frame. *See Granite State Ins. Co. v. Pulliam Enters., Inc.*, No. 3:11-CV-432, 2015 WL 4946156, at *2 (N.D. Ind. Aug. 18, 2015) ("[B]y failing to object to the Magistrate Judge's 2012 order within 14 days, the Insurers have waived any objection to rulings made in that Order."); *Day v. River Forest Sch. Dist. 90*, No. 10 CV 4426, 2012 WL 3835840, at *2

23

(N.D. Ill. Sept. 4, 2012) ("A party who misses the 14-day deadline waives his right to object to the magistrate judge's order.").

Here, Mallory does not dispute that her motion to vacate is untimely under Rule 72. Nor could she: Mallory waited until November 17 to file her motion—twenty-eight days after the October 20 Order; twenty-nine days after the October 19 Order; forty-eight days after the September 30 Order, and eighty-five days after the August 24 Order. This added failure by Mallory to timely raise the lack-of-authority argument she now asserts confirms the Court's decision to find the argument waived.

Similar to her contention about her failure to make her lack-of-authority argument before the magistrate judge, Mallory appears to contend that she did not object when the discovery referral to the magistrate judge was still open "because she believed such [an] objection would have been met with another Rule 11 letter from Rush followed by additional sanctions being issued against [her] and her counsel." Doc. 223 at 12. If this is Mallory's contention, it does not make much sense. Even if the discovery referral were still open, Mallory would have filed her objections with this Court—not the magistrate judge—and it would have been this Court that would have decided the objections, as well as whether additional sanctions were warranted in connection with the objections. Regardless, Mallory's belief about the consequences of objecting to the magistrate judge's rulings does not excuse her failure to timely object to these rulings under Rule 72. *See Divane*, 194 F.3d at 849; *Warner*, 855 F.2d at 374.

Mallory also argues that her failure to timely object under Rule 72 does not confer upon the magistrate judge "authority that he never had." Doc. 223 at 11; *see also id.* at 9 ("Regardless of when Plaintiff raised the issue of [the magistrate judge's] authority, . . . the fact of the matter is [the magistrate judge] lacked authority to issue monetary sanctions."). This argument might

carry some weight if magistrate judges had no authority to even *consider* issues related to sanctions. But that is not the case. Mallory herself concedes that the magistrate judge had the authority to consider Rush's sanctions requests. *See, e.g.*, Doc. 214 at 6 ("[A] district judge may refer a dispute about sanctions to a magistrate judge for a recommendation."). Stated differently, the magistrate judge can consider *any* sanctions request; the dispositive or nondispositive nature of the request only affects what type of ruling the magistrate judge must issue (order or recommendation) and the standard the district judge must use to review that ruling (clear and legal error or *de novo*).

Notably, neither *Alpern* nor *Retired Chicago Police Ass'n* suggested that the magistrate judge's sanctions orders in those cases were null and void from the start. Rather, the Seventh Circuit in both cases remanded the case so the district court could review the magistrate judge's sanctions order using the proper standard of review. *Retired Chi. Police Ass'n*, 76 F.3d at 869; *Alpern*, 38 F.3d at 935–36. And although *Gorbitz* broadly stated that "a magistrate judge is without the authority to award sanctions," 196 F.3d at 883, the Court does not interpret this statement as precluding a magistrate judge from even considering a sanctions motion. *Gorbitz* cited *Alpern* for this proposition, and *Alpern* recognized that although a magistrate judge does not have the authority to make an independent decision on a sanctions motion, he still has the authority to consider the motion and make a recommendation on it. *Alpern*, 38 F.3d at 935 ("A district judge may refer a dispute about sanctions to a magistrate judge for a recommendation under § 636(b)(1)(B) or § 636(b)(3), but the magistrate judge may not make a decision with independent effect."); *id.* at 936 ("[T]he award of sanctions cannot stand, because the magistrate judge lacked authority to do anything *other than make a recommendation*." (emphasis added)). Moreover, given that magistrate judges can consider motions for judgment on the pleadings, for

summary judgment, and to dismiss for failure to state a claim—motions that have "the power to drastically change the landscape of the case" by, for instance, disposing of a claim or terminating the case, *see Cage*, 2020 WL 1248685, at *14—the Court finds it extremely unlikely that the Seventh Circuit in *Gorbitz* intended to hold that a magistrate judge could not similarly consider motions for sanctions, which more often than not involve consequences less serious than the dismissal of an entire claim or case, as the four sanctions orders in this case demonstrate.

Therefore, regardless of whether the magistrate judge was required to issue an "order" or a "recommendation," he clearly had the authority to *consider* Rush's sanctions requests. And to the extent the magistrate judge erroneously issued orders as opposed to recommendations, the Court would have treated the rulings as the latter and reviewed them *de novo*—had Mallory raised the issue before the magistrate judge and in timely filed objections under Rule 72. *See, e.g.*, *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 690–91 (N.D. Ill. 2009) (where a sanctions motion was a dispositive matter, treating the magistrate judge's order as a recommendation subject to *de novo* review); *Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433584, at *2 (N.D. Ill. July 2, 2002) (same). But Mallory did not do so.

Finally, Mallory contends that Rule 72's fourteen-day time frame is not jurisdictional and that the Court may excuse her noncompliance "in the interests of justice." Doc. 223 at 10; *see Kruger v. Apfel*, 214 F.3d 784, 786–87 (7th Cir. 2000) (because Rule 72's deadline for objections is not jurisdictional, "the district court was not barred from considering the late objections"); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (although "[f]ailure to timely object to [a magistrate judge's] report generally waives any further judicial review of the findings contained in the report," a court "may excuse the default in the

interests of justice" (citations omitted)).  But "the parties and the [C]ourt are not free to ignore"

the fourteen-day window.  *Day*, 2012 WL 3835840, at *2.  Rather, in determining whether to

consider tardy objections, the Court "should take into account whether the objections are

egregiously late and whether the delay in filing them has caused any prejudice."  *Id.*  The Court

may also "consider whether counsel had missed earlier deadlines or made other last-minute

requests for extensions of time."  *See Ammons-Lewis v. Metro. Water Reclamation Dist. of

Greater Chi.*, 543 F. App'x 591, 594 (7th Cir. 2013) (identifying these considerations in

determining whether the district court erred in refusing to consider a party's late objections to the

magistrate judge's ruling).  Ultimately, "[t]he decision whether to consider a late-filed objection

is within the [C]ourt's discretion."  *Day*, 2012 WL 3835840, at *2.

Here, the Court declines to exercise its discretion to consider Mallory's late objections.

First, Mallory's objections are egregiously late.  She did not miss the fourteen-day deadline by a

mere day or two; she blew the deadline for the latest orders (the October 19 and October 20

Orders) by at least two weeks.  What is more, Mallory could (and should) have first raised the

lack-of-authority issue when briefing Rush's motion to quash and then as an objection to the

magistrate judge's corresponding August 24 Order, and Mallory's motion to vacate missed the

fourteen-day deadline for this order by two-and-a-half months.  Second, Mallory's delay has

prejudiced Rush.  On November 4, the magistrate judge deemed discovery closed and all matters

relating to the discovery referral concluded.  After that, Mallory's payment of the sanction

awards should have been the only thing stemming from the magistrate judge's discovery

supervision that remained to be done; the parties otherwise should have been moving toward

resolving this case.  Yet Mallory's failure to timely raise her lack-of-authority argument is now

forcing Rush to brief and respond to an argument that it could have easily addressed as part of its

prior briefings.  Third, Mallory's counsel has already missed numerous deadlines and made

several requests for extensions of time.  At the outset of the case, Mallory failed to meet multiple

written discovery deadlines.  She then failed to accurately and timely disclose her treating

physicians and failed to provide a certain medical authorization in a timely manner.  More

recently, she filed her response to Rush's motion to dismiss a day late.  She has sought to extend

the deadline to serve her expert report, the deadline to serve her summary judgment response

(twice), the deadlines to file responses to discovery motions, and the deadlines to pay the

sanctions ordered by the magistrate judge (twice).  Given Mallory's repeated inability to comply

with the deadlines that the judges supervising this litigation have set, the Court finds no reason to

forgive the tardiness of Mallory's objections.  *See Ammons-Lewis*, 543 F. App'x at 594 (finding

that the plaintiff's "repeated delays provided ample reason for the district judge to refuse to

consider [his] late objections" to the magistrate judge's rulings).

To summarize, the magistrate judge had the authority to consider the sanctions requests at

issue, regardless of whether the Court deems the matters dispositive or nondispositive, and

Mallory waived any right to challenge the magistrate judge's authority to independently order

and impose sanctions by both failing to raise this challenge before the magistrate judge and in

timely filed Rule 72 objections.  Accordingly, the Court accepts and upholds the magistrate

judge's August 24 Order, September 30 Order, October 19 Order, and October 20 Order,

whether the Court considers them "orders" or "recommendations," and denies Mallory's motion.

*See McVay v. Store House Co.*, 289 F. Supp. 3d 892, 896 (S.D. Ind. 2017) (a district court may

"defer to and adopt those conclusions [in a magistrate judge's recommendation] where a party

did not timely object" (citations omitted)); *see also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577

F.3d 752, 760 (7th Cir. 2009) ("If no party objects to the magistrate judge's action, the district

judge may simply accept it."); *Melgar*, 227 F.3d at 1040 ("[T]he findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them.").

## II.     Rush's Motion to Dismiss with Prejudice

Rush moves to dismiss Mallory's case with prejudice under either Rule 41(b) or the Court's inherent authority.  Under Rule 41(b), the Court may dismiss a plaintiff's case with prejudice "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order."  Fed. R. Civ. P. 41(b); *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993).  The Court also possesses inherent powers, "not conferred by rule or statute, 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. ----, 137 S. Ct. 1178, 1186 (2017) (citation omitted).  This inherent authority "includes 'the ability to fashion an appropriate sanction for conduct [that] abuses the judicial process,'" *id.* (citation omitted), such as dismissing a plaintiff's case with prejudice "if the circumstances so warrant," *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).

As discussed further, the Court concludes that dismissing Mallory's case with prejudice under Rule 41(b) is warranted.  Because Rule 41(b) provides a sufficient basis for dismissal, the Court declines to consider whether it could also invoke its inherent authority to dismiss the case with prejudice.  *See Goodvine v. Carr*, 761 F. App'x 598, 602 (7th Cir. 2019) ("We ordinarily encourage reliance on a statute or rule before the invocation of inherent authority if the statute or rule adequately sanctions the conduct."); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 390–91 (7th Cir. 2002) ("The inherent authority of federal courts . . . [should] be exercised sparingly, to punish misconduct . . . not adequately dealt with by other rules.").

"A Rule 41(b) dismissal is a harsh sanction appropriate only when there is a clear record of delay or contumacious conduct, or where other less drastic sanctions have proved unavailing." *Collier v. SP Plus Corp.*, 889 F.3d 894, 897 (7th Cir. 2018). Because dismissing a case with prejudice "is the most severe sanction that a court may apply," the Court must carefully exercise its judicial discretion in doing so. *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018). To that end, the Seventh Circuit has directed district courts to ideally consider six factors "when entertaining a Rule 41(b) motion:"

1) the frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit,

2) the apportionment of responsibility for those failures between the plaintiff and his counsel,

3) the effect of those failures on the judge's calendar and time,

4) the prejudice, if any, to the defendant caused by the plaintiff's dilatory conduct,

5) the probable merits of the suit, and

6) the consequences of dismissal for the social objectives of the type of litigation that the suit represents.

*Id.* at 931–32. An attorney's disciplinary history may also be relevant. *See Fuery v. City of Chicago*, 900 F.3d 450, 468 (7th Cir. 2018); *Rojas v. Town of Cicero*, 775 F.3d 906, 909 (7th Cir. 2015). "Ultimately, the decision to dismiss 'depends on all the circumstances of the case.'" *McMahan*, 892 F.3d at 932 (quoting *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011)).

The Court first considers the *McMahan* factors and Frederick's disciplinary history. Then, the Court considers whether those factors and any other relevant circumstances show one or more of delay, contumacious conduct, or the ineffectiveness of less drastic sanctions. *See*

*Jones v. M/A Mgmt. Corp.*, 773 F. App'x 844, 847 (7th Cir. 2019) (emphasizing that a Rule 41(b) dismissal is permissible when there is delay *or* contumacious conduct *or* less drastic sanctions have proven unavailing).

### A.    Multi-Factor Analysis

***The Plaintiff's Failure to Comply with Deadlines.***  Mallory and her counsel have repeatedly failed to comply with the deadlines set by the judges overseeing this litigation.  Right out of the gate, Frederick failed to meet multiple written discovery deadlines—she served Mallory's MIDP disclosures five days late and her written discovery responses more than two weeks late, and she failed to identify any issues with Rush's written discovery responses by the magistrate judge's December 6, 2018 deadline.  Even after the magistrate judge ultimately gave Frederick until January 22, 2019—more than six additional weeks—to identify any issues with Rush's written discovery responses, she failed to meet this deadline as well, and she waited until almost three weeks *after* this deadline to request an extension of time.  Then, after the magistrate judge denied Frederick's request because of the extensions she had already received and the importance of "clos[ing] the loop on written discovery before moving forward with oral discovery," Doc. 32, Frederick asked the district judge to extend the fact discovery deadline by sixty days, a request the district judge denied.

In March 2019 (shortly before the original close of fact discovery), the magistrate judge expressed his concern with "the level of diligence Plaintiff has exercised in meeting her discovery obligations" regarding the disclosure of her treating physicians, Doc. 47 at 1–2, and he extended the fact discovery deadline by two months at Rush's request because of Mallory's failure to accurately and timely disclose her treating physicians.  Around the same time, Mallory failed to comply with the magistrate judge's order to provide a certain medical authorization to

Rush, which required the magistrate judge—a year later—to again order Mallory to provide the authorization, and even then, it appears that Mallory failed to provide the proper authorization in a timely manner. Also, although Mallory saw certain medical providers starting in September 2019, Frederick waited several months before asking the magistrate judge to re-open fact discovery so that she could depose these providers. The magistrate judge denied this request because her "lack of diligence in prosecuting this case" did not provide good cause for the request, but he still re-opened discovery in part so that Frederick could depose certain other witnesses that Rush had recently disclosed. Doc. 165 at 1. Even with this opportunity, there is no indication that Frederick ever used the re-opened discovery period to take these depositions.

In addition, Frederick has sought to extend the deadline to respond to a motion to compel, which she then never did even though the magistrate judge granted the extension; to extend the deadline to serve her expert disclosure, which she then never served even after the magistrate judge granted the extension; to extend the deadline to respond to Rush's summary judgment motion on two occasions; to extend the deadlines to respond to Rush's motion to quash and motion to strike her supplemental disclosures; and to extend the deadlines to pay the sanctions ordered by the magistrate judge on two occasions. And, as already discussed, Frederick inexcusably delayed in seeking to vacate the magistrate judge's sanctions orders.

The Court certainly understands that the extension of the occasional deadline may be necessary—after all, things happen—and the Court is sympathetic to the personal issues Frederick claims have contributed to her need to seek numerous extensions. But a request for an extension should be the exception, not the norm, and a party should not be asking judges to extend almost every deadline they set. *See Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("A good judge sets deadlines, and the judge has a right to assume that deadlines will

be honored.  The flow of cases through a busy district court is aided, not hindered by adherence

to deadlines.").  And although the Court also acknowledges that Frederick is a solo practitioner,

"[t]here aren't special rules and special deadlines for sole practitioners," *Logan v. Berryhill*, No.

10 C 5051, 2017 WL 1344521, at *3 (N.D. Ill. Apr. 12, 2017), and a solo practitioner's workload

cannot constitute a default excuse for the need for an extension, *see Harrington v. City of

Chicago*, 433 F.3d 542, 548 (7th Cir. 2006) ("[N]eglect due to a busy schedule is not excusable.

Common sense dictates that there is a limit to the quantity of cases a sole practitioner can

professionally handle by [herself] at any one point in time." (citations omitted)).  Thus, even with

these considerations in mind, this factor supports dismissal.

  ***Apportionment of Responsibility.***  Frederick, Mallory's counsel, appears to be

responsible for most, if not all, of the conduct at issue.  She is the individual who has sought

numerous extensions, failed to comply with discovery deadlines, engaged in the conduct in

connection with Dr. Cordes that warranted sanctions, and filed the briefs disrespecting the

magistrate judge and opposing counsel.  Indeed, Rush does not single out any action or inaction

by Mallory herself as warranting dismissal of her case; rather, it focuses on Frederick's actions.

*See, e.g.*, Doc. 208 at 1, 4 (referring to Frederick's "repeated abuse of the judicial process" and

"misconduct in this case").  This factor, therefore, weighs against dismissal.  *See Kasalo*, 656

F.3d at 559, 561 (that all the errors appeared to be the fault of the plaintiff's attorney and not the

plaintiff weighed against dismissing the plaintiff's case under Rule 41(b)); *Ball*, 2 F.3d at 758

("[D]ismissing a suit because of delays and omissions committed solely by the plaintiff's lawyer,

with no connivance by the plaintiff, . . . should induce caution.").

  ***Effect on the Judges' Calendar and Time.***  Frederick's conduct in this case has

unnecessarily increased the amount of time the magistrate and district judges have had to devote

to monitoring this case. Frederick clogged the docket by seeking numerous deadline extensions, and every time she did so, the magistrate judge or the district judge had to spend time evaluating the request and determining whether the request should be granted. The magistrate judge also had to take the time to address Frederick's improper subpoena to Dr. Cordes and her untimely cancellation of his deposition, Frederick's ill-intentioned motion for reconsideration, and her frivolous motion to strike Dr. Cordes' opinion—issues that all could have been avoided had Frederick considered the documents to which she already had access, adequately reviewed Dr. Cordes' expert report, and taken his deposition as originally scheduled. And more recently, this Court has had to devote time and resources to addressing Mallory's voluntary motion to dismiss, which the Court believes Frederick filed, at least in part, so she could potentially evade the magistrate judge's unfavorable rulings, and Mallory's motion to vacate, which the Court views as yet another attempt by Frederick to avoid the consequences of her actions. This factor weighs in favor of dismissal.

   ***Prejudice to Rush.*** Frederick's actions have prejudiced Rush in this case. As the Court explained in its November 9, 2020 opinion, since August 2020, "Rush has had to expend additional time and effort briefing several matters for which the magistrate judge found it necessary to sanction Mallory and her counsel," and although the magistrate judge ordered "Mallory and her counsel to reimburse Rush for some of the fees and expenses it incurred in litigating these matters, . . . Rush would not have had to expend time and effort to raise these matters in the first place if Mallory's counsel had complied with the applicable rules." Doc. 211 at 7 & n.4. Moreover, the docket in this case reveals that Frederick's lack of diligence in conducting discovery at the outset of the case, her numerous requests for extensions, and her more recent filings have prejudiced Rush by delaying the resolution of this case. *See McMahan*,

892 F.3d at 932 ("An unreasonable delay gives rise to a presumption of prejudice."); *Ball*, 2 F.3d at 759 ("Defendants are not second-class citizens in our courts. . . . A protracted lawsuit ties up the defendant's time and prolongs the uncertainty and anxiety that are often the principal costs of being sued."). This factor favors dismissal.

*Probable Merits of the Suit.* Rush claims that it is unlikely that a jury will return a verdict in Mallory's favor and that even if it does, the verdict will not reach five figures. Not surprisingly, Mallory sees things differently; she claims that she will be able to prevail and show more than $75,000 in damages. The Court has determined that material factual issues exist that necessitate a trial, and the Court cannot say with whom a jury would more likely side after hearing and seeing all the evidence at trial. As for damages, the Court is skeptical that Mallory will be able to prove, without expert testimony, that her fall caused pain, suffering, and other damages that exceed $75,000, but the Court cannot predict at this time the amount of damages the jury could reasonably award Mallory based on the evidence if it found in her favor. The Court concludes that this factor neither weighs for nor against dismissal.

*Social Objectives.* This negligence lawsuit, like other tort suits, has two objectives from a social standpoint: deterrence and compensation. *See Ball*, 2 F.3d at 757. Dismissal with prejudice under Rule 41(b) defeats the deterrence objective because "the defendant walks away scot free even if [it] did in fact commit the tort for which the plaintiff is suing." *Id.* Dismissal with prejudice also impairs the compensatory objective, although to a lesser extent because where the misconduct is committed by the plaintiff's attorney (the case here), the plaintiff can seek compensation from her attorney in a suit for legal malpractice. *Id.* Accordingly, this factor weighs against dismissal.

*Prior Disciplinary History.* The Court may also "examine, as one factor in its consideration, the modus operandi of the attorney as evidenced by her prior disciplinary history." *Fuery*, 900 F.3d at 467. Where an attorney's relevant disciplinary history makes clear that the attorney is unwilling "to conform her conduct to requirements laid down by judicial orders or rules of procedure," the Court should impose a firmer sanction than the record of the case alone might support. *See Rojas*, 775 F.3d at 909–10; *see also Fuery*, 900 F.3d at 468 ("When an attorney repeatedly violates the standards and oaths of the profession, then a court may take notice of that attorney's disciplinary history when evaluating whether sanctions are appropriate."). Rush cites a host of cases with which Frederick was involved either as an attorney or a *pro se* plaintiff and claims that these cases show "a long history of litigation misconduct." Doc. 222 at 6–7. After reviewing the cases, the Court believes Rush overstates its case, but the Court does find two cases relevant to its analysis: *Frederick v. Easty*, No. 14 C 342, 2015 WL 603884 (N.D. Ill. Feb. 11, 2015), and *Liner v. FCA US LLC*, 333 F.R.D. 122 (N.D. Ill. 2019).

In *Easty*, Frederick represented herself in a dispute over a failed real estate transaction. 2015 WL 603884, at *1. The defendant advised her that he would seek Rule 11 sanctions if she did not withdraw her complaint, and when she did not respond, he moved for summary judgment. *Id.* at *4. Frederick requested twenty-eight days to respond to the summary judgment motion, but on the day her response was due, she moved to voluntarily dismiss the action without costs or, alternatively, for additional time to file her response. *Id.* at *4–5, *10. The court denied the motion to dismiss, but Frederick ultimately received more than three months to respond to the defendant's summary judgment motion. *Id.* at *5. Yet she again waited until the day her summary judgment response was due to seek another extension of time. *Id.* Although observing

36

"that Frederick 'effectively granted her own continuance by waiting until the date the brief was due to file a request for additional time,'" the court granted her an additional fifteen-day extension. *Id.* Frederick still failed to fully comply with this deadline; she submitted only part of her briefing on the due date, and then unilaterally filed a more thorough, amended response a few days later. *Id.* at \*5, \*10. In addition to granting summary judgment to the defendant, *id.* at \*5–8, the court awarded Rule 11 sanctions against Frederick because, among other things, her "amended complaint included several factual contentions that were baseless at the time they were made" and she brought the lawsuit "for the improper purpose of causing unnecessary delay and needlessly increasing the cost of litigation," *id.* at \*9–10. On the latter point, the court explained that "Frederick's conduct in submitting deficient pleadings to the court was pervasive and caused such unnecessary delay and expense as to justify sanctions in this case," specifically calling out Frederick's request to dismiss the case on the day her summary judgment response was due, her multiple requests for more time to respond, and her submission of incomplete responses on the due date. *Id.* at \*10.

In *Liner*, the magistrate judge addressed a motion to compel and for sanctions brought by Frederick, who was representing the plaintiff in an employment race discrimination case. 333 F.R.D. at 124. Discovery began under the MIDP in December 2018, and the district judge ordered discovery to close by August 20, 2019. *Id.* Yet, by June 4, 2019, Frederick had not issued any discovery requests or responded to the defendants' discovery requests. *Id.* at 124–25. Nor had she taken a deposition by July 18, 2019 (a month before the close of discovery). *Id.* at 125. Then, eleven days before the end of discovery, Frederick moved for a sixty-day extension of the discovery deadline, citing, among other things, various ailments and injuries and her status as a solo practitioner with a heavy workload. *Id.* The magistrate judge granted the request but

specified that all fact discovery had to be completed by October 21, 2019. *Id.* In mid-August, the defendants served insufficient interrogatory responses, but Frederick waited until early October (just before the extended close of discovery) to raise the issue with the defendants and in a motion to compel. *Id.* at 126–27. Frederick blamed the delay on more medical issues and the fact that she was a single mother whose two daughters recently went off to college. *Id.* But, as the magistrate judge noted, these events did not occur until early September, which meant that Frederick still had about three weeks to address the defendants' interrogatory responses before that. *Id.* at 127. The magistrate judge also noted that Frederick did not inform him that the parties had resolved nearly two dozen of the discovery disputes she had made part of the motion, which "created needless work and expense" for the magistrate judge. *Id.* at 126, 128.

The Court finds *Easty* and *Liner* informative regarding Frederick's conduct in this case. First, both cases suggest that Frederick's inability to meet discovery and motion deadlines in this case is more of a modus operandi than an anomaly. *Liner* is especially relevant because in that case, Frederick offered many of the same justifications for this inability—various medical issues, heavy workload as a solo practitioner, and seeing her daughters off to college—as she has in this litigation. *See Liner*, 333 F.R.D. at 125–27. Second, Frederick's attempt to voluntarily dismiss her case in *Easty* when faced with a summary judgment motion and a potential sanctions motion is like her attempt to voluntarily dismiss this case without prejudice after being sanctioned and becoming increasingly dissatisfied with the magistrate judge's handling of the case. Third, Frederick's willingness to make several baseless factual contentions in her complaint in *Easty* reinforces the Court's skepticism of many of the assertions Frederick currently makes.

Frederick unpersuasively attempts to distance herself from *Easty* and *Liner* by noting that in *Easty*, she was a *pro se* plaintiff pursuing a personal claim, and that in *Liner*, the magistrate

38

judge also made "equal or worse comments" about the defendants' counsel. Doc. 220 at 6. But her conduct in acting as her own attorney in *Easty* still sheds light on her conduct as Mallory's attorney here. Moreover, that some of the conduct of the defendants' counsel in *Liner* may have been objectionable as well does not excuse Frederick's conduct. *See Pyramid Energy, Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir. 1989) ("That both parties' counsel were dilatory in complying with the court's orders does not excuse Pyramid's conduct.").

In sum, one *McMahan* factor, the probable merits of the case, is neutral; two *McMahan* factors, apportionment of responsibility and social objectives, weigh against dismissal; and three *McMahan* factors—Frederick's failure to comply with deadlines, the effect of Frederick's conduct on the judges' calendars and time, and the prejudice to Rush—as well as Frederick's prior history, weigh in favor of dismissal. With these findings in mind, the Court now turns to whether "there is a clear record of delay or contumacious conduct, or [if] other less drastic sanctions have proved unavailing." *Collier*, 889 F.3d at 897.

### B. Delay, Contumacious Conduct, or Less Drastic Sanctions

***Delay.*** The Court finds that there is a clear record of delay. As discussed regarding the first *McMahan* factor, Frederick failed to diligently conduct and respond to discovery and repeatedly did not comply with the deadlines set in this litigation. And, as discussed with respect to the third and fourth *McMahan* factors, Frederick's inability to participate in the discovery and briefing processes without court-ordered extensions, as well as her more recent filing of ill-advised motions, have consumed an inordinate amount of the time and resources of the magistrate judge, this Court, and Rush, thereby delaying resolution of this case.

***Contumacious Conduct.*** The Court also concludes that there is a clear record of contumacious conduct. "Contumacious" conduct is conduct that is perverse in resisting

authority, stubbornly disobedient, or rebellious. *See Anderson v. United Parcel Serv.*, 915 F.2d

313, 313 (7th Cir. 1990); Contumacious, Merriam-Webster Dictionary, *available at*

https://www.merriam-webster.com/dictionary/contumacious (last visited Feb. 1, 2021).

Frederick's conduct meets this definition.

The magistrate judge sanctioned Frederick or her client four times in three months, yet

even now, Frederick sees nothing wrong with the conduct that led to those sanctions. She

maintains that her subpoena to Dr. Cordes, which the magistrate judge found violated Rule

45(d)(1), was "perfectly legal" and "a normal and customary procedure in this jurisdiction."

Doc. 223 at 3, 6. She still contends that Dr. Cordes is not entitled to the cancellation fee that the

magistrate judge awarded. And she continues to insist that Dr. Cordes' expert report was

deficient under Rule 26(a)(2) even though the magistrate judge found this argument groundless.

In fact, Frederick chalks up the sanctions not to *any* wrongdoing on her part but to the magistrate

judge's alleged bias:

> Only when Plaintiff began to pull together and complain about the
> various instances of bias[] she observed in the treatment of this
> case by [the magistrate judge] did [he] become angry and threaten
> Plaintiff lest she retreat from her complaints about his behavior.
> When Plaintiff's counsel refused to be bullied by [the magistrate
> judge], he then began to issue voluminous sanctions against
> Plaintiff and her counsel.
>
>                              ***
>
> And as for remorse, Plaintiff does not believe that [the] sanctions
> herein were awarded based upon wrongful conduct. Rather the
> sanctions awarded by [the magistrate judge] were outside of his
> authority and were awarded as retaliation for Plaintiff's counsel's
> complaining of wrongful judicial conduct on the part of [the
> magistrate judge] and her refusal to withdraw her complaints about
> the conduct when threatened by [the magistrate judge].

Doc. 220 at 11; Doc. 223 at 9.

To be clear, this is not to say that mere disagreement with a magistrate judge's rulings is contumacious. But timely objections under Rule 72—which Frederick did not lodge—are the proper mechanism for asserting that disagreement. And even Frederick's motion to vacate does not challenge the merits of the magistrate judge's rulings; it only challenges his authority to issue the rulings in the first place. In these circumstances, Frederick's unwavering insistence that she is right (and the magistrate judge is wrong) is stubbornly disobedient.

Furthermore, Frederick has utterly ignored the magistrate judge's and this Court's warnings regarding the assertions she makes in her briefing. After Frederick included vitriolic attacks on the magistrate judge in her September 11 motion for reconsideration, the magistrate judge cited several model rules of professional conduct that the assertions violated, warned Frederick of potential consequences, and gave her the chance to withdraw the assertions. She refused and, notably, made no attempt to explain to the magistrate judge why she believed her assertions were appropriate or supported by fact or law. Then, after Frederick's briefing in connection with her motion to voluntarily dismiss this case failed to treat the magistrate judge and opposing counsel "with courtesy and dignity," this Court warned Frederick that if she "criticize[s] or challenge[s] a judge's or opposing counsel's handling of a matter," she must do so respectfully, and that the Court would not again tolerate similar mudslinging. Doc. 211 at 13.

Despite these warnings from two federal judges, Frederick has continued to use her filings to disrespect opposing counsel and the magistrate judge. She accuses Rush and its counsel of viewing her, a solo practitioner, and Mallory, "an indigent, mentally ill, black female," as "easy prey." Doc. 220 at 1. Frederick repeatedly accuses the magistrate judge of angrily bullying and threatening her as retaliation for her objections to his practices and of abusing his power to restrict her and her client's constitutional right to free speech when there is

41

no support in the record whatsoever for these accusations. Indeed, the Seventh Circuit's Chief Judge found that nothing in Frederick's judicial misconduct complaint against the magistrate judge supported her allegations of bias. What is more, Frederick's briefing disrespectfully refers to the magistrate judge by only his last name on multiple occasions.

As a member of the bar, Frederick has an obligation to treat opposing counsel and the judges overseeing this case with courtesy and respect. *In re Snyder*, 472 U.S. 634, 647 (1985); *Harrington*, 433 F.3d at 548–49. Although criticism of opposing counsel or the court is permitted and sometimes warranted, the criticism should be professional and civil. *See In re Snyder*, 472 U.S. at 647. And the criticism must have a basis in law or fact. *See In re Nora*, 778 F.3d 662, 665–66 (7th Cir. 2015) (an attorney's "bandying about of serious accusations" against judicial officers and opposing counsel "without basis in law or fact [was] unacceptable and warrant[ed] sanctions"). Frederick's briefing does not meet these standards. In fact, her conduct is similar to the sanctionable conduct of the attorney in *In re Nora*—it involves "needless antagonism toward opposing counsel and judicial officers" and a refusal to back down from accusations against the district judge and opposing counsel. 778 F.3d at 664, 666.

Frederick's continued hurling of disrespectful assertions in her briefing, even after warnings from the magistrate judge and this Court, reflects a disregard for the authority of the judges overseeing this case. In particular, it is the Court's view that Frederick's repeated and unfounded allegations accusing the magistrate judge of racial bias and bullying and threatening behavior "exhibit such flagrant contempt for the court and its processes that to allow [Frederick] to continue to invoke the judicial mechanism for [her and her client's] benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests

of the parties immediately before the court."[16] *Barnhill*, 11 F.3d at 1368. This clear record of Frederick's contumacious conduct further supports dismissal under Rule 41(b).

**Less Drastic Sanctions.** Finally, the Court considers whether less drastic sanctions than dismissal with prejudice would be effective. Where the misconduct at issue is that of a party's attorney and not the party itself, the Seventh Circuit recommends, but does not require, the Court to "consider sanctioning a misbehaving lawyer before the sanction of dismissal is imposed on a possibly faultless plaintiff." *Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003). For instance, instead of "punishing the plaintiff through dismissal of the suit," the Court may consider punishing the attorney through a fine, an award of costs and attorneys' fees to be paid by the attorney, a citation for contempt, or professional discipline. *Ball*, 2 F.3d at 758. In the end, though, the Court is not required "to enter lesser sanctions before dismissing a case for lack of prosecution." *McMahan*, 892 F.3d at 932; *Pyramid Energy*, 869 F.2d at 1062 ("A trial court is entitled to say, under proper circumstances, that enough is enough, and less severe sanctions than dismissal need not be imposed where the record of dilatory conduct is clear." (citations omitted)).

After considering less drastic sanctions than dismissal with prejudice, the Court concludes that none of these sanctions would effectively redress Frederick's conduct or deter her from continuing to engage in such conduct. Monetary sanctions, whether in the form of a fine or the award of Rush's costs and attorneys' fees, are not likely to work. By November 4, Frederick

---

[16] The Court recognizes Frederick's apparent belief that her constitutional right to free speech protects her statements about the magistrate judge. But "[t]he right of free speech is not absolute," *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006), and lawyers, as officers of the court, "may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech," *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1081–82 (1991) (O'Connor, J., concurring). In any event, the Court does not need to define the contours of Frederick's free-speech rights in these circumstances because Frederick does not cite any authority that supports her belief that the First Amendment immunizes her statements and accusations. *See Schaefer*, 839 F.3d at 607 ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

was on the hook for almost $17,000 of Rush's attorneys' fees, and yet this fee award did not

make Frederick pause and reevaluate her conduct in this litigation moving forward.  To the

contrary, Frederick maintains that the magistrate judge awarded monetary sanctions not because

of any wrongful conduct on her part, but as retaliation against her.  And although Frederick

appears to have paid all the awarded fees, as she was required to do,[17] she now contends that the

fees should be *returned to her*.  Frederick's apparent belief that she has done nothing to warrant

the sanctions already awarded against her indicates that further monetary sanctions will likewise

have no effect on her behavior.

Nor would the possibility of professional discipline or contempt be effective.  The

magistrate judge has already filed a complaint with the ARDC, and yet Frederick continues to

file briefs filled with disrespectful and unfounded assertions.  If the Court similarly recommends

professional discipline, Frederick will likely view this action as a retaliatory "effort to bully [her]

. . . for daring to object" to the practices or motivation of the magistrate judge and an abusive and

improper effort to silence her complaints.  *See* Doc. 223 at 4; *see also* Doc. 196 at 3 (assertion by

Frederick that the magistrate judge "bullied and threatened" her with an ARDC complaint and

filed the complaint as retaliation for her judicial misconduct complaint against him).  In other

words, the Court does not anticipate that Frederick would understand either professional

discipline or contempt to be a wake-up call regarding the impropriety of her actions.  Rather, the

Court believes she would view such a sanction as evidence of bias or retaliation by the Court

against her and her client.

Frederick views herself as the wronged individual in all of this.  She sees herself as

someone who has dared to stand up to and challenge what she perceives to be improper bias and

---

[17] Absent an order from this Court staying payment of the sanctions, Frederick was obligated to pay the
sanction awards even if she believed they were invalid.  *See Maness v. Meyers*, 419 U.S. 449, 458 (1975);
*R-BOC Representatives, Inc. v. Minemyer*, 233 F. Supp. 3d 647, 689 n.47 (N.D. Ill. 2017).

conduct by the magistrate judge and opposing counsel. Given this viewpoint, the Court does not see how lesser sanctions that allow this litigation to proceed will convince Frederick that she must change her ways.

### C.    Conclusion

In conclusion, the balance of the *McMahan* factors and Frederick's prior history weigh in favor of dismissal; there is a clear record of both delay and contumacious conduct by Frederick; and less drastic sanctions would be ineffective. Although the Court is cognizant that the offending conduct is primarily (and most likely exclusively) that of Mallory's counsel, and not Mallory herself, the power to dismiss a case "would be almost worthless" if the Court "could not hold a litigant responsible for the acts of his or her attorney where those acts meet the requirements of" Rule 41. *Roland v. Salem Cont. Carriers, Inc.*, 811 F.2d 1175, 1180 (7th Cir. 1987). "[T]hat a party suffers the consequences for its counsel's misconduct is part and parcel of our system of representative litigation." *Barnhill*, 11 F.3d at 1368 n.9. As such, the Seventh Circuit has made clear that an attorney's conduct may substantially harm a blameless client by causing her case to be dismissed. *E.g.*, *Fuery*, 900 F.3d at 467; *Martinez v. City of Chicago*, 499 F.3d 721, 727–28 (7th Cir. 2007); *Ball*, 2 F.3d at 756. Based on all the circumstances, the Court exercises its judicial discretion to dismiss Mallory's case with prejudice under Rule 41(b).

### III.    Rush's Requests for Rule 11 Sanctions

Finally, Rush asks the Court to order Mallory to pay, as sanctions under Rule 11, all the attorneys' fees it incurred in responding to two of Mallory's filings: (1) Mallory's motion to vacate and (2) Mallory's response to Rush's motion to dismiss. Under Rule 11, an attorney certifies that, "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the contentions she makes in a filing are "not being

presented for any improper purpose," "are warranted by existing law or by a nonfrivolous argument" for changing the law, and have evidentiary support. Fed. R. Civ. P. 11(b). "If the [C]ourt determines that a lawyer or party has violated Rule 11(b), '[it] may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.'" *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 957 (7th Cir. 2020) (quoting Fed. R. Civ. P. 11(c)(1)). One permissible sanction is the award of "reasonable attorney's fees and other expenses directly resulting from the [Rule 11] violation." Fed. R. Civ. P. 11(c)(4). The Court has "considerable discretion in deciding whether to issue Rule 11 sanctions." *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 529 (7th Cir. 2020).

### A. Mallory's Motion to Vacate

Rush argues that Rule 11 sanctions are warranted for Mallory's motion to vacate because (1) Mallory "clearly missed the 14-day deadline for filing the motion pursuant to Rule 72" and (2) Mallory's motion "delayed the case unnecessarily and needlessly increased litigation costs for Rush" under Rule 11(b)(1). Doc. 219 at 9. The Court concludes that Rule 11 sanctions are not warranted on either ground.

First, although Mallory failed to challenge any of the sanctions orders within Rule 72's fourteen-day deadline, the "deadline is not jurisdictional," so the Court could have exercised its discretion to consider the challenge as set forth in Mallory's motion to vacate. *Kruger*, 214 F.3d at 786–87. Based on the state of affairs in this litigation, this possibility was a long shot, but the Court cannot say it was legally or factually frivolous in and of itself for Mallory to take that shot.

Second, the Court declines to consider Rush's invocation of Rule 11(b)(1), which prohibits filings presented to "cause unnecessary delay" or "needlessly increase the cost of litigation," because Rush did not raise this ground in its November 18 "safe harbor" letter. The

party seeking Rule 11 sanctions must serve the opposing party with a letter or demand "describ[ing] the specific conduct that allegedly violates Rule 11(b)" and then allow the opposing party twenty-one days to remedy the purportedly offending filing before presenting its sanctions request to the Court. Fed. R. Civ. P. 11(c)(2); *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 559 (7th Cir. 2019). The purpose of this safe-harbor provision "is to require parties to notify their opponents of possible frivolous arguments or claims contained in a [filing] and to give them [ample] opportunity to withdraw or correct that flawed [filing]." *Interface Sec. Sys., L.L.C. v. Edwards*, No. 03-4054, 2006 WL 8444029, at *16 (C.D. Ill. Mar. 30, 2006). Thus, "a safe-harbor letter only authorizes a party to seek sanctions based on the grounds set forth in the letter." *Novoselsky v. Zvunca*, 324 F.R.D. 197, 204 (E.D. Wis. 2017).

Here, though, Rush did not mention subsection (b)(1), delay, or the needless increase in litigation costs in its November 18 safe harbor letter. This deprived Mallory of the opportunity to consider these issues before Rush formally sought sanctions on these grounds in its December 16 response to Mallory's motion to vacate. Therefore, the Court denies Rush's request for sanctions based on Rule 11(b)(1) as well. *See id.* (Rule 11 letter that said nothing about the plaintiff's alleged improper purpose in bringing suit did not provide a safe harbor as to that alleged violation); *Interface Sec. Sys.*, 2006 WL 8444029, at *15–16 (denying Rule 11 sanctions where the movant's Rule 11 motion with the court raised grounds that the movant had not identified in the proposed motion he served on the opposing party).

### B. Mallory's Response to Rush's Motion to Dismiss

Rush also argues that Rule 11 sanctions are warranted for Mallory's response to Rush's motion to dismiss because "it contains factual misrepresentations, frivolous legal positions[,] and personal attacks against" the magistrate judge and Rush's counsel and because it "needlessly

increased the litigation costs for Rush, pursuant to Rule 11(b)(1)." Doc. 222 at 9. Whatever the merits of Rush's contentions, the problem is that Rush's safe harbor letter did not give Mallory twenty-one days to withdraw her filing, as required by Rule 11(c)(2). In the letter, sent December 17, 2020, Rush gave Mallory only until January 5, 2021—nineteen days—to withdraw or correct her filing. Rush then filed its reply, which included its request for Rule 11 sanctions, on January 6, 2021, only twenty days after it sent the safe harbor letter. True, Mallory filed her response a day late, which made it impossible for Rush to give Mallory twenty-one days to withdraw her filing before the due date for its reply. But Rush should have still given Mallory twenty-one days (until January 7) in its safe harbor letter to withdraw her filing and then sought a brief extension of time to file its reply brief on January 8 or later, so that Mallory received the required twenty-one-day safe harbor. Compliance with Rule 11(c)(2)'s requirements "requires the opportunity to withdraw or correct the challenged [filing] within 21 days without imposition of sanctions." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 (7th Cir. 2017). Because Rush's December 17, 2020 letter and January 6, 2021 filing did not provide that opportunity, the Court declines to award Rule 11 sanctions based on Mallory's response to Rush's motion to dismiss. *See id.* at 888–89 (reversing award of Rule 11 sanctions where the moving party's Rule 11 letters did not offer the opposing parties a twenty-one-day safe harbor).[18]

---

[18] Also, awarding attorneys' fees for two briefs (one which Rush would have had to file anyway) on top of a dismissal with prejudice strikes the Court as overkill.

**CONCLUSION**

For the foregoing reasons, the Court grants Rush's motion to dismiss with prejudice [208]; denies Mallory's motion to vacate [214]; grants Mallory's motion to accept her December 17, 2020 filing as timely [221]; and denies Rush's requests for Rule 11 sanctions. The Court dismisses this case with prejudice under Federal Rule of Civil Procedure 41(b).


Dated: February 9, 2021

SARA L. ELLIS
United States District Judge